UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-61987-CIV-COHN/SELTZER

CYPRESS CHASE CONDOMINIUM
ASSOCIATION "A"

        Plaintiff,

vs.

QBE INSURANCE CORPORATION,
a Pennsylvania corporation,

        Defendant.
_____/

## ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MOTION FOR ENTRY OF A STAY

**THIS CAUSE** is before the Court on Defendant QBE Insurance Corporation's Motion to Dismiss Second Amended Complaint and Motion for Entry of a Stay [DE 29] ("Motion to Dismiss and Stay"). The Court has considered the Motion to Dismiss and Stay, Plaintiff Cypress Chase Condominium Association "A"'s Response [DE 30], Defendant's Reply [DE 33], the record in this case, and is otherwise advised in the premises.

### I. BACKGROUND

On October 18, 2010, Plaintiff brought this action for declaratory judgment. Complaint [DE 1]. The operative complaint is the Second Amended Complaint [DE 28]. According to the Second Amended complaint, Plaintiff is a Florida, not-for-profit corporation, operating as a condominium association. Defendant sells property insurance policies to condominium associations throughout the State of Florida. Plaintiff purchased Insurance Policy QFW4036 ("the Policy") from Defendant. The

Policy was in effect when Hurricane Wilma struck South Florida on October 24, 2005.

Plaintiff alleges that Hurricane Wilma damaged the condominium property, and that the damage was covered under the Policy. Plaintiff notified Defendant of the damage, and on October 27, 2005, Defendant assigned Plaintiff's claim number 5P18709W-01. According to Defendant's letter attached to the Second Amended Complaint, Exhibit B to Sec. Am. Compl. [DE 28-2] ("CRN Response Letter"), Defendant denied the claim on December 9, 2005, and closed the claim without payment. In the same letter, Defendant explained that the reason for denial was that the cost of Plaintiff's damage did not exceed the $345,420.00 hurricane deductible.

On October 18, 2010, Plaintiff filed a Civil Remedy Notice of Insurer Violations, Exhibit A to Sec. Am. Compl. [DE 28-1] ("CRN"), based on claim denial and claim delay. On December 17, 2010, Defendant responded to the CRN, denying the alleged violations, and explaining that it had denied Plaintiff's claim because the amount of damage did not exceed the Policy's hurricane deductible. See CRN Response Letter.

In the Second Amended Complaint, Plaintiff alleges that there is a bona fide, actual, present practical need for certain declarations concerning the parties' rights and obligations relating to the Policy. The Second Amended Complaint therefore brings three Counts seeking various forms of declaratory relief. Defendant filed the instant Motion on January 24, 2011, arguing that Counts I and II should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), and that Count III should be stayed.

2

## II. MOTION TO DISMISS COUNTS I AND II

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss lies for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of [its] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

At this stage in the litigation, the Court must consider the factual allegations in the Complaint as true, and accept all reasonable inferences therefrom. Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994). Nevertheless, the Court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

## B. Analysis

Defendant requests that the Court dismiss Counts I and II. As discussed below, the Court finds that Count I should be dismissed for lack of justiciable controversy, Count II should be dismissed as premature.

### Count I

In Count I, Plaintiff requests declaratory judgment that hurricane damage to glass windows and sliding glass doors that provide access to a single condominium unit are covered property under the Policy. Sec. Am. Compl. at 5. Plaintiff purports to seek this declaration pursuant to Florida's Declaratory Judgment Act, Fla. Stat. §§ 86.011 *et seq*, see id., but Florida's Declaratory Judgment Act is a procedural statute, and Florida's procedural rules are inapplicable here because this is a diversity case, see Strubel v. Hartford Ins. Co. of the Midwest, 2010 WL 745616, at *2 (M.D. Fla. Feb. 26, 2010). Therefore, the Court construes Count I as a claim for relief pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201. See id.

Defendant seeks dismissal of this count because at the time Plaintiff filed this case, no justiciable controversy existed. "In all cases arising under the [federal] Declaratory Judgment Act, the threshold question is whether a justiciable controversy exists." Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co., 68 F.3d 409, 414 (11th Cir. 1995) (citations omitted). "Congress limited federal jurisdiction under the Declaratory Judgment Act to actual controversies, in statutory recognition of the fact that federal judicial power under Article III, Section 2 of the United States Constitution extends only to concrete 'cases or controversies.'" Id. (citing Tilley Lamp Co. v. Thacker, 454 F.2d 805, 807-08 (5th Cir. 1972)). To meet the justiciable controversy requirement, "[t]he

4

party who invokes a federal court's authority must show, at an 'irreducible minimum,' that at the time the complaint was filed, [it] has suffered some actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition." Id.

The Court agrees that no justiciable controversy existed when Plaintiff filed this case. The Second Amended Complaint contains no allegations that, before filing suit, Plaintiff expressed disagreement with Defendant's adjustment of the claim or that Defendant ever expressly stated that the glass windows and sliding glass doors were not covered under the policy. Plaintiff's Response argues that "the case at bar was filed nearly *five full years* after Plaintiff alleges that it provided notice to QBE concerning its loss," Resp. at 3, but notice of the loss is different from notice of the issue regarding windows and sliding glass doors. For a justiciable controversy to exist on the narrow issue of whether the Policy provides coverage for windows and sliding glass doors, Plaintiff must allege an adversarial dispute regarding that specific issue, and the Second Amended Complaint fails to do so. The Second Amended Complaint does allege that Defendant "did not consider glass windows and sliding glass doors when it determined that the amount of Plaintiff's covered Hurricane Wilma loss was less than the applicable hurricane deductible," Sec. Am. Compl. ¶ 26, and "failed to include windows and sliding glass doors in its initial evaluation of Plaintiff's loss," id. ¶ 28, but as Defendant points out, these allegations are different than alleging that those items were not covered under the policy, Mot. at 5 n.2.

Plaintiff eventually did advise Defendant of its additional claimed damage on

5

October 20, 2010, two days after filing this case. However, this notice came too late, as Defendant never had a chance to discuss the matter with Plaintiff, let alone provide an adversarial response before Plaintiff filed this case. Similar to Atlanta Gas, where mailing a notice to the insureds the day before filing the case demonstrated no justiciable controversy because the lack of adequate notice meant the insureds had no opportunity to respond before the complaint was filed, 68 F.3d at 415, notifying Defendant after this case was filed also provided no opportunity to respond before the case was filed. As such, there was no justiciable controversy here regarding coverage as to windows and sliding glass doors.

Plaintiff attempts to remedy the lack of notice and adversarial response by alleging that Defendant "has frequently taken the position in the past that windows and sliding glass doors are not covered under the QBE condominium association policy form that was in effect when Hurricane Wilma struck," Sec. Am. Compl. ¶ 28; see also Resp. at 4-6 (referencing other QBE cases). Yet, Defendant's position on its other claims is irrelevant to its position on Plaintiff's claims, and it certainly does not create a case or controversy between these two parties in this case. See Atlanta Gas, 68 F.3d at 414-15 (requiring a case or controversy between the parties in the case); see also Cummings v. State Farm Mut. Auto. Ins. Co., 323 F. App'x 847, 847-48 (11th Cir. 2009) (finding no justiciable controversy when complaint did not allege insurance company had denied or threatened to deny a claim by the insured regarding the issue in the case). As in Atlanta Gas, where no justiciable controversy existed in a complaint based on insurers denying coverage in the past, the "speculation based on the insurance companies' dealings with other insureds does not present a concrete case or

controversy." Atlanta Gas, 68 F.3d at 415. Here, like in Atlanta Gas, when Plaintiff sought the court's guidance through a declaratory judgment, the issues it presented were mere conjectural questions based on other insureds' previous disagreements with Defendant. See id. Such allegations are insufficient to demonstrate the requisite justiciable controversy.

Finally, Plaintiff argues that there is a justiciable controversy here by virtue of Defendant ignoring Plaintiff's claim. Resp. at 9-10. But Defendant did not ignore the claim. Rather, Defendant denied the claim in December 2005. See CRN Response Letter. Plaintiff also explains that it did not raise the issue regarding windows and sliding glass doors with Defendant prior to filing suit because "there was no particular reason for Plaintiff to believe that any pre-suit discussions with QBE would have been fruitful," Resp. at 6, but whether or not pre-suit discussions will be fruitful is irrelevant under the federal Declaratory Judgment Act, see 28 U.S.C. § 2201. As for Plaintiff's contention that "engaging in any pre-suit discussions would have squandered the extremely limited time remaining before the statute of limitations expired," Resp. at 6, the Court notes that, as Plaintiff highlights in its own Response, this suit was filed "*five full years* after Plaintiff alleges that it provided notice to QBE concerning its loss," Resp. at 3. Five years provided plenty of time for Plaintiffs to raise their concerns with Defendant.

The fact remains that the Declaratory Judgment Act requires the existence of a justiciable controversy before a case can proceed, see 28 U.S.C. § 2201; Atlanta Gas, 68 F.3d at 414, and there was no justiciable controversy between the parties to this case at the time Plaintiff filed the case. Accordingly, Count I must be dismissed.

## Count II

The instant Policy, like many insurance policies, contains an appraisal paragraph, setting forth the procedure for either party to demand appraisal of the loss in the event of a disagreement. See Sec. Am. Compl. ¶ 37. Count II constitutes a request to compel the appraisal process. Id. at 8. Defendant argues that the Court should dismiss this request as a premature demand for appraisal because the parties have not satisfied the procedural prerequisites to appraisal.

Before an appraisal process can begin, the parties must meet the procedural requirements contained in their agreement so that the insurer can have the information necessary to determine whether it disagrees with the insured. See U.S. Fid. & Guar. Co. v. Romay, 744 So. 2d 467, 469-72 (Fla. Dist. Ct. App. 1999). As the Romay Court noted in a case involving an appraisal provision similar to the one in the instant Policy, it is "axiomatic that an arbitrable issue exists between parties whose agreement provides for appraisal when there is a disagreement in the dollar amount of the loss being claimed." Id. at 469. The "disagreement necessary to trigger appraisal cannot be unilateral." Id. at 469. The Romay Court elaborated that "disagreement" means:

> that the existence of a real difference in fact, arising out of an honest effort to agree between the insured and the insurer, is necessary to render operative a provision in a policy for arbitration of differences. Furthermore, there must be an actual and honest effort to reach an agreement between the parties, as it is only then that the clause for arbitration becomes operative, the remedies being successive.

Id. at 470 (quoting 14 Couch on Insurance 2d § 50:56 (1982)); see also Galindo v. ARI Mut. Ins. Co., 203 F.3d 771, 777 (11th Cir. 2000) ("insureds must comply with the post-loss terms of their respective homeowner's policies, which enables the insurance

8

companies to investigate the insureds' claims and to disagree with the loss amount before the appraisal term becomes effective"); Citizens Prop. Ins. Corp. v. Galleria Villas Condo. Ass'n, Inc., 48 So. 3d 188, 191 (Fla. Dist. Ct. App. 2010) ("Until [post-loss] conditions are met and the insurer has a reasonable opportunity to investigate and adjust the claim, there is no 'disagreement' . . . . Only when there is a 'real difference in fact, arising out of an actual and honest effort to reach an agreement between the insured and the insurer,' is an appraisal warranted").

The appraisal provision in the instant Policy states:

**2. Appraisal**

If we and you disagree on the value of the property of the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their difference to the umpire. A decision agreed to by any two will be binding . . .

Sec. Am. Compl. ¶ 37 (quoting QBE Policy Form CP 00 17 04 02 at 9). This language makes disagreement a prerequisite to appraisal. See id. ("If we and you disagree . . ."). Plaintiff first requested appraisal on October 18, 2010, as part of the initial complaint in the instant action. Plaintiff does not claim to have provided any notice that it disagreed with Defendant's treatment of the loss claim prior to filing this action, nor does the record demonstrate that any such notice was provided. Without notice, Defendant could not have had an opportunity to request compliance with the Policy's post-loss obligations, much less express any disagreement with Plaintiff. See Romay, 744 So. 2d at 471 ("No reasonable and thoughtful interpretation of the policy could support compelling appraisal without first complying with the post-loss obligations."). As the

Romsay Court explained, compelling appraisal before the parties have complied with their post-loss obligations would mean that a "policyholder, after incurring a loss, could immediately invoke appraisal and secure a binding determination as to the amount of loss." Id. Plaintiff has not alleged that it initiated an "actual and honest effort to reach agreement," 744 So. 2d 467, or that the parties engaged in any "meaningful exchange of information sufficient for each party to arrive at a conclusion before a disagreement could exist." id. Instead, Plaintiff is attempting to create a unilateral disagreement, which is specifically precluded by Romsay. See id. at 469. Therefore, because no disagreement existed between the parties when Plaintiff filed this case, Plaintiff has not demonstrated that the parties met the procedural requirements before Plaintiff demanded appraisal. Accordingly, the demand is premature, and Count II must be dismissed.

### III. MOTION TO STAY COUNT III

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. American Water Works & Elec. Co., 299 U.S. 248, 254 (1936). Federal courts routinely exercise their power to stay a proceeding where a stay would promote judicial economy and efficiency. See, e.g., Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Mgmt. Dist., 559 F.3d 1191, 1198 (11th Cir. 2009) (approving district court's decision to stay case pending appeal in another case that was "likely to have a substantial or controlling effect on the claims and issues in the stayed case").

In Count III, Plaintiff requests declaratory judgment stating that the Policy's

hurricane deductible is void and that Defendant cannot withhold any amount of Plaintiff's claim in excess of the Policy's standard deductible. Sec. Am. Compl. at 10. The Florida Supreme Court is currently considering this issue in <u>QBE Insurance Corporation v. Chalfonte Condominium Apartment Association, Inc.</u>, No. SC09-441 (Fla.). Defendant therefore requests that the Court stay Count III pending the outcome of <u>Chalfonte</u>. Mot. at 12-14. Plaintiff agrees. Reply at 1-2. Accordingly, in light of the parties' agreement and the fact that the Florida Supreme Court's decision will likely have a substantial or controlling effect on this case, the Court will stay Count III pending the resolution of <u>Chalfonte</u>.[1]

## IV. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Defendant QBE Insurance Corporation's Motion to Dismiss Second Amended Complaint and Motion for Entry of a Stay [DE 29] is **GRANTED**:

1. Count I is hereby **DISMISSED** for lack of justiciable controversy;

2. Count II is hereby **DISMISSED** as premature;

3. Count III is hereby **STAYED** pending the Florida Supreme Court's decision in <u>QBE Insurance Corporation v. Chalfonte Condominium</u>

---

[1] A number of other courts in this district have also stayed cases pending the outcome of <u>Chalfonte</u>. <u>See, e.g.</u>, <u>Garden-Aire Vill. S. Condo. Ass'n Inc. v. QBE Ins. Corp.</u>, Case No. 10-61985-CIV-DIMITROULEAS; <u>Towers of Quayside Tower I, et al. v. QBE Ins. Corp.</u>, Case No. 10-23805-CIV-LENARD; <u>South Bay Club Condo. Ass'n, Inc. v. QBE Ins. Corp.</u>, Case No. 10-24479-CIV-ALTONAGA; <u>Villas at the Hammocks Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.</u>, Case No. 09-61558-CIV-COOKE; <u>Ross Realty Inv., Inc. v. Lexington Ins. Co.</u>, Case No. 09-60874-CIV-COOKE.

11

Apartment Association, Inc., No. SC09-441 (Fla.);

4. The parties shall file a **STATUS REPORT** with the Court regarding the proceedings in QBE Insurance Corporation v. Chalfonte Condominium Apartment Association, Inc., No. SC09-441 (Fla.) every 45 days beginning 45 days following the entry of this Order. In addition, the parties shall file a **STATUS REPORT** with the Court within 10 days of any decision or event in Chalfonte that may allow the stay to be removed;

5. Any pending motions are **DENIED as moot**, and the Court of Court is hereby directed to **CLOSE** this case for administrative purposes. The Court retains jurisdiction, and the stay shall be removed and the case shall be restored to the active docket upon motion of either party or the Court's own motion.

**DONE AND ORDERED** in Chambers in Fort Lauderdale, Florida, on this 15TH day of April, 2011.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF