UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-61987-CIV-COHN/OTAZO-REYES

CYPRESS CHASE CONDOMINIUM
ASSOCIATION "A",

    Plaintiff,

v.

QBE INSURANCE CORP.,

    Defendant.

_____/

# ORDER

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Summary Judgment or in the Alternative Motion to Compel Appraisal on a Dual Track Basis and Stay Litigation Pending Completion of the Appraisal Process [DE 93]; QBE's Motion for Summary Judgment [DE 101]; Plaintiff's Motion to Strike Defendant QBE Insurance Corporation's Demand for Trial by Jury [DE 92]; Plaintiff's Motion in Limine to Prevent QBE Insurance Corporation from Presenting Evidence Concerning Valuation or Causation of the Underlying Insurance Claim [DE 97]; and QBE's Motion to Exclude Testimony From Plaintiff Regarding the Applicability of the Florida Building Code, or in the Alternative, Motion for Daubert Hearing [DE 103]. The Court has considered the motions, the parties' responses and replies, the argument of counsel at the March 8, 2013, hearing, and is otherwise fully advised in the premises.

## I. BACKGROUND

Plaintiff Cypress Chase Condominium Association "A" ("Plaintiff") is a not-for-profit Florida corporation operating as a condominium association. In 2005, Plaintiff purchased a commercial property damage insurance policy from Defendant QBE

Insurance Corporation ("QBE").  See DE 45-1.  The policy was in effect on October 24, 2005, when Hurricane Wilma struck South Florida, damaging Plaintiff's property.  DE 70 ¶ 13; DE 102 ¶ 1.  Plaintiff notified QBE of the loss on or before October 27, 2005.  DE 70 ¶¶ 14-19.  On October 28, 2005, QBE sent an adjuster, Robert Sansone, to inspect Plaintiff's property.  DE 94 ¶ 3; DE 102 ¶ 5.  Mr. Sansone concluded that Plaintiff's covered damage was only $67,807.50, substantially less than Plaintiff's $345,420.00 deductible.  DE 70 ¶ 27.  Plaintiff alleges that Mr. Sansone failed to make note of certain damages to Plaintiff's roof, windows, and sliding glass doors.  See id. ¶¶ 24-29.

Nearly five years later, on October 18, 2010, Plaintiff commenced the instant action.  See DE 1.  That same day, Plaintiff filed a Civil Remedy Notice [DE 28-1] against QBE.  On October 19, 2010, Plaintiff notified QBE that it disagreed with QBE's position regarding the value of Plaintiff's insured loss, and demanded an appraisal of its claim.  DE 70 ¶ 98.  QBE received the demand on October 20, 2010.  Id. ¶ 99.

On December 3, 2010, QBE filed a Motion to Dismiss and Motion for Entry of a Stay [DE 15].  Plaintiff then filed its First Amended Complaint [DE 18] on December 27, 2010.  Before QBE responded to the First Amended Complaint, Plaintiff received leave to file a Second Amended Complaint, in which it asserted three claims.  See DE's 27, 28.  In Count I, Plaintiff asked the Court for a declaration that its windows and sliding glass doors are covered under the Policy (the "coverage claim").  In Count II, Plaintiff sought declaratory relief establishing that Plaintiff is entitled to use the appraisal process to determine the amount of damage it suffered from Hurricane Wilma (the "appraisal claim").  See DE 27.  In Count III, Plaintiff asked the Court to declare that the

2

hurricane deductible in the policy was void (the "deductible claim").  QBE responded by filing a Motion to Dismiss Second Amended Complaint [DE 29].  On April 15, 2011, the Court granted the motion, dismissing the appraisal and coverage claims, and staying the deductible claim pending the decision of the Florida Supreme Court on an issue central to that claim.  See DE 41.  On September 28, 2011, Plaintiff moved for leave to file a Third Amended Complaint.  DE 46.  The Court deferred ruling on that motion until the stay on Count III was lifted.  See DE 55.  On August 13, 2012, the Court lifted the stay, and on September 6, 2012, the Court granted Plaintiff leave to amend.  DE's 64, 67.  Then, on October 6, 2012, QBE voided the policy and denied coverage altogether.  In the Third Amended Complaint [DE 70], which is the operative pleading, Plaintiff brings only the appraisal and coverage claims.  QBE denies both claims, and has asserted twelve affirmative defenses.  See DE 73.

## II. DISCUSSION

### A. Cross-Motions for Summary Judgment

On January 21, 2013, Plaintiff filed its Motion for Summary Judgment or in the Alternative Motion to Compel Appraisal on a Dual Track Basis and Stay Litigation Pending Completion of the Appraisal Process [DE 93].  The following day, QBE filed its Motion for Summary Judgment [DE 101].

#### 1. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), the Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant "bears the initial responsibility of informing the district court of the basis for its

motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must show that "there is an absence of evidence to support the non-moving party's case." Id. at 325.

After the movant has met its burden, the burden of production shifts to the non-moving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [the Court may] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In making this determination, the Court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

### 2. Analysis

QBE seeks summary judgment on both counts of the Third Amended Complaint, as well as on its fourth and seventh affirmative defenses. Plaintiff moves for summary judgment on both of its claims and on each of QBE's affirmative defenses. Plaintiff also requests, in the alternative, that the Court stay litigation and allow an appraisal panel to

4

resolve certain causation and valuation issues. Plaintiff does not set forth the grounds for granting summary judgment on the appraisal claim. Therefore, Plaintiff's motion will be denied regarding that claim. The Court will address the remaining issues in turn.

### a. The Appraisal Claim

QBE contends that it is entitled to summary judgment on the appraisal claim because it has denied coverage outright and voided the insurance policy. Thus, QBE argues, there is no dispute as to the valuation of the claim, and appraisal would be an inappropriate remedy. This argument has already been rejected in similar cases in this District. See Garden-Aire Village South Condo. Ass'n, Inc. v. QBE Ins. Corp., No. 10-61985-CIV-DIMITROULEAS/SNOW, DE 135 at 6 (S.D. Fla. Nov. 20, 2012); 200 Leslie Condo. Ass'n, Inc. v. QBE Ins. Corp., No. 10-61984-CIV-OTAZO-REYES, DE 199 at 5-6 (S.D. Fla. Jan. 14, 2013). In Garden-Aire, as in the present case, the defendant voided the plaintiff's policy and denied the claim, alleging that the plaintiff had failed to comply with its post-loss obligations and had fraudulently inflated its claim. The defendant then asserted that, because the policy was void, appraisal was an improper remedy. Judge William P. Dimitrouleas rejected this contention, holding that, "When an insurer denies coverage in its entirety, either for being void or for failure to comply with conditions precedent, there is no right to appraisal *until the merits of these defenses can be ascertained*." Id. at 6 (emphasis added); see also 200 Leslie DE 199 at 5 (adopting the reasoning of Garden-Aire). Accordingly, the Court proceeded to inquire into the validity of the policy and the insured's compliance with its post-loss obligations. Id. at 8-12. The Court explained that, if it found that the policy was still valid and that all prerequisites to appraisal had been satisfied, it would then be able to grant the plaintiff's

appraisal claim. Id. at 8.

QBE responds by citing to Oceania I Condominium Association, Inc. v. QBE Insurance Corp., No. 11-20578-CIV-SEITZ/SIMONTON, 2011 U.S. Dist. LEXIS 54256, at *4-6 (S.D. Fla. May 20, 2011). In Oceania I, Judge Patricia A. Seitz denied the Plaintiff's Motion to Compel Appraisal, finding that "because QBE has declared the policy void, there is no covered claim and therefore the parties cannot disagree over the amount of any covered claim." Id. at *5. However, contrary to QBE's assertion, Oceania I does not imply that a suit to compel appraisal automatically fails once an insurer denies coverage. In Garden-Aire, Judge Dimitrouleas examined the holding of Oceania I, and explained that, "[b]ecause there were numerous issues yet to be decided, Judge Seitz simply found that compelling appraisal was not appropriate at that stage of the proceedings, because QBE's affirmative defenses to coverage had to be evaluated first." Id. at 6.

The Court agrees with the approach taken in Garden-Aire and 200 Leslie, and will defer ruling on the appraisal claim until the merits of QBE's defenses are determined. Under Florida law, dismissal of the appraisal claim is not compulsory. See State Farm Fire & Cas. Co. v. Wingate, 604 So. 2d 578, 579 (Fla. 4th DCA 1992) (staying appraisal to allow the court to resolve coverage issues raised when insurer voided coverage). Here, as in Garden-Aire, the parties have already engaged in extensive pretrial litigation and discovery. Under these circumstances, dismissing the case would not be in the best interests of the parties or the judicial system. Accordingly, summary judgment will be denied as to this claim.

### b. The Coverage Claim

Plaintiff moves for summary judgment on the coverage claim, contending that the windows and sliding glass doors that provide access to individual condominium units qualify as covered property under the insurance policy. DE 93 at 12 (citing to Royal Bahamian Association v. QBE Insurance Co., 750 F. Supp. 2d 1346, 1363 (S.D. Fla. 2010)). QBE responds that the coverage claim should be denied for two reasons. First, QBE asserts that the claim is not justiciable because QBE has never explicitly denied that windows and sliding glass doors are covered under the policy. Therefore, QBE contends, there is no dispute between the parties regarding coverage of such property. The Court already rejected this argument in its Order Granting Plaintiff's Motion for Leave to File a Third Amended Complaint [DE 67], finding that QBE's longstanding failure to take a position on coverage amounts to a *de facto* denial of coverage. DE 67 at 10. The Court sees no reason to change its previous finding on this issue.

Second, QBE aruges that the claim is mooted because the policy is void in its entirety. However, the Court has not yet made a ruling as to the validity of the contract. If the Court finds that the contract is invalid, then the coverage claim may be denied as moot. Accordingly, the Court will delay ruling on the coverage claim until it determines the validity of the contract.

### c. Affirmative Defenses 1, 2, and 3

QBE's first three affirmative defenses assert, in various forms, that this suit is barred because of Plaintiff's failure to comply with its post-loss obligations. Specifically, QBE alleges that Plaintiff violated its post-loss obligations in four ways.

First, QBE contends that Plaintiff failed to provide prompt notice of the subject loss.  Plaintiff responds that it fully complied with the policy by giving notice of its original claim within forty-eight hours after Hurricane Wilma struck Plaintiff's property.  QBE acknowledges that Plaintiff gave prompt written notice of its original claim of loss.  However, QBE objects to Plaintiff's waiting nearly five years to give notice of its supplemental claim.  QBE's argument is without merit.  In Summit Towers Condominium Association, Inc. v. QBE Insurance Co., No. 11-60601-CIV-SEITZ/SIMONTON, DE 138 at 6-8 (S. D. Fla., filed Mar. 21, 2011), Judge Seitz held that an insurance policy, with identical wording to the subject policy, did not require the plaintiff to give additional notice of its supplemental claim.  In that case, the plaintiff made a claim for $2,000,000.00 in damages in its initial claim.  Id. at 6.  Four years later, it revised its claim to include damage to windows and glass doors, bringing the claim up to $13,000,000.00.  Id.  As in the instant case, the defendant in Summit Towers argued that the plaintiff failed to give prompt notice as required by the policy.  The Court looked to the language of the policy to determine the plaintiff's compliance.  The relevant provision required that the insured "[g]ive [the insurer] prompt notice of the loss or damage," and "[i]nclude a description of the property involved."  Id. at 6-7 (citing Section E.3.a(2) of the subject policy).  The Court concluded that this provision only required the insured to notify the insurer of the loss and to describe the property involved.  It did not require the insured to give a detailed inventory of the loss.  The Court noted that another provision of the policy required that the insured give a detailed inventory of the damaged and undamaged property, but only at the insurer's request.  See id. at 8.  Therefore, the Court found that the plaintiff's initial notice to the defendant

8

satisfied its obligation under the policy. Id.

The Court finds Judge Seitz's reasoning persuasive. Here, QBE argues that Plaintiff violated its post-loss obligations by failing to give prompt notice of its supplemental claim on the windows and doors. Such detailed notice is not mandated by Section E.3.a(2) of the policy. Section E.3.a(2) only requires that the insured "[g]ive [the insurer] prompt notice of the loss or damage," and to "[i]nclude a description of the property involved." DE 45-4 at 8. Florida law provides that "insurance contracts are construed in accordance with the plain language of the policy as bargained for by the parties." Fayad v. Clarendon Nat'l Ins. Co., 899 So. 2d 1082, 1086 (Fla. 2005) (internal quotations and citations omitted). Clear and unambiguous provisions are enforced according to their terms. Taurus Holdings, Inc. v. US Fid. & Guar. Co., 913 So. 2d 528, 532 (Fla. 2005). Here, it is undisputed that Plaintiff provided written notice to QBE that its property had been damaged within forty-eight hours of such damage. See DE 94 ¶ 2; DE 102 ¶ 4. Nothing more is called for by the subject provision. Thus, the Court finds that Plaintiff satisfied its obligation to provide QBE prompt notice of its claim, and will grant summary judgment to Plaintiff on this aspect of Affirmative Defenses 1, 2 and 3.

Second, the affirmative defenses assert that Plaintiff failed to provide QBE with "complete inventories of the damaged and undamaged property," as required by Section E.3.a(5) of the policy. DE 45-4 at 8. QBE particularly takes issue with Plaintiff's refusal to specify which condominium units suffered damage to their windows and sliding glass doors. On May 3, 2011, QBE requested a Proof of Loss ("POL") statement from Plaintiff, and provided Plaintiff with a POL form to fill out. Plaintiff

9

completed the form and returned it to QBE on May 24, 2011.  DE 94 ¶ 7.  In doing so, however, Plaintiff crossed out standard language in the form which stated that no items would be included in the POL "but such as were destroyed or damaged at the time of said loss."  DE 94-2 at 1.  In its claim in the POL, Plaintiff included a line item titled, "Remove and replace windows per WindReady proposal," at a cost of $2,448,666.80.  Id. at 4.  Thereafter, on June 23, 2011, QBE asked Plaintiff to indicate which condominium units suffered damages to their windows and sliding glass doors.  DE 116 ¶ 48.  QBE renewed this request on August 30, 2011.  Id. ¶ 51.  On September 14, 2011, Plaintiff informed QBE of its position that its obligation was satisfied by submitting a copy of the WindReady proposal with its POL, and that the policy does not require Plaintiff to specify which units were damaged.  Id. ¶ 52.  As of November 20, 2012, Plaintiff had not prepared an estimate of the property which was directly damaged by Hurricane Wilma.  Id. ¶¶ 61-65.  The Court observes that the plain terms of the policy call for the insured to provide "complete inventories of the damaged and undamaged property," at the insurer's request.  DE 45-4 at 8.  Plaintiff has failed to do so.  Therefore, the Court will deny Plaintiff summary judgment on the issue of the sufficiency of the inventory it provided.

  Third, QBE contends that Plaintiff failed to provide a proper POL statement because, as described above, Plaintiff crossed out certain language in the POL form.  Section E.3.a(7) of the policy requires, in the event of a loss, that the insured send the insurer a "signed, sworn proof of loss containing the information [that the insurer requests] to investigate the claim."  DE 45-5 at 1.  Plaintiff argues that the form language that it crossed out did not seek any information.  Rather, Plaintiff asserts, the

10

language attempted to commit Plaintiff to an incorrect position concerning its rights under the policy.  It is Plaintiff's position that certain provisions of the Florida Building Code mandate the replacement of undamaged glass when more than thirty percent of the windows and glass doors on the property are damaged (the so-called "thirty-percent rule").  Thus, because Plaintiff alleges that more than thirty percent of the windows and doors were damaged, it contends that it is entitled to recover for the replacement of even the undamaged glass items.  QBE responds that, by crossing out the form language, Plaintiff did not identify which property was directly damaged by the storm.  As such, QBE asserts that Plaintiff withheld information QBE sought in investigating the claim.  The Court finds that there is a factual dispute as to whether the form language was 'requesting information,' within the meaning of the policy.  See Garden-Aire, DE 135 at 8 (finding, in similar circumstances, that it is a question of fact whether a modified proof of loss qualifies as "essentially no proof of loss at all."); 200 Leslie, DE 199 at 5 (holding that plaintiff's crossing out form language precluded a finding of compliance with the policy's post-loss conditions as a matter of law).  Accordingly, because there is a disputed issue of material fact, the Court will deny summary judgment on the adequacy of the POL statement.

      Fourth, QBE asserts that Plaintiff failed to comply with the examination under oath ("EUO") requirement in the policy.  Section E.3.b provides that QBE "may examine any insured under oath . . . about any matter relating to . . . the claim . . . ." DE 45-5 at 1.  Plaintiff argues that it fulfilled its obligation by providing its treasurer, Jacqueline Suave, for an EUO on November 9, 2011.  DE 94 ¶ 14; DE 116 ¶ 54.  QBE responds that Ms. Suave knew very little about the claim and did nothing to prepare for the EUO.

11

As a result, QBE claims, she was not able to respond to many of QBE's questions. Plaintiff replies that an insured does not have a duty to acquire information about its claim in preparation for an EUO. Furthermore, Plaintiff asserts that QBE had the opportunity to collect information on the claim via discovery, which compensates for any deficiencies in Ms. Suave's testimony.[1]

Under Florida law, "[a]n insured's refusal to comply with a demand for an examination under oath is a willful and material breach of an insurance contract which precludes the insured from recovery under the policy." Goldman v. State Farm Fire Gen. Ins. Co., 660 So. 2d 300, 303 (Fla. 4th DCA 1995) (citing, e.g., Stringer v. Fireman's Fund Ins. Co., 622 So. 2d 145 (Fla. 3d DCA)). Here, QBE has provided evidence that Ms. Suave did not fully participate in the EUO. See DE 94 at ¶¶ 54-58 (citing DE 102-2 at 127-223, 227-230). Plaintiff has not rebutted such evidence. Thus, Plaintiff has not met its burden for summary judgment, and accordingly, Plaintiff's motion will be denied on this issue.

### d. Affirmative Defenses 4, 5, 6, and 7

QBE's fourth, fifth, and sixth Affirmative Defenses each assert different excluded causes of loss. In QBE's seventh Affirmative Defense, it contends that its obligation to pay under the policy is limited to the actual cash value of Plaintiff's loss. Plaintiff argues

---

[1] Plaintiff cites to Scottsdale Insurance Co. v. University at 107th Avenue, 827 So. 2d 1016, 1016-17 (Fla. 3d DCA 2002), for the proposition that the collection of information during discovery is sufficient to satisfy an insured's post-loss obligations. However, this misrepresents the holding of Scottsdale. In Scottsdale, the insured waited until after it filed suit to submit a POL statement and make its representative available for an EUO. Id. The court merely found that it was permissible for the insured to wait until after filing suit to comply with its post-loss obligations — not that it could avoid those obligations altogether. See id.

that these defenses are properly heard by an appraisal panel. The Court agrees. The Florida Supreme Court has held that:

> [W]here there is a demand for an appraisal under the policy, the only 'defenses' which remain for the insurer to assert are that there is no coverage under the policy for the loss as a whole or that there has been a violation of the usual policy conditions such as fraud, lack of notice, and failure to cooperate.

Johnson, 828 So. 2d at 1025. While Affirmative Defenses 1 through 3 each go to Plaintiff's failure to cooperate, Affirmative Defenses 4 through 7 relate to causation or the amount Plaintiff could recover. Therefore, the Court concludes that Affirmative Defenses 4 through 7 should be addressed in the context of the appraisal process, rather than at trial.

### e. Affirmative Defenses 8, 9, 10, and 11

QBE's eighth Affirmative Defense alleges that Plaintiff's claims are barred by the statute of limitations. Plaintiff denies this assertion and points out that the same argument was rejected in Garden-Aire, which was filed the same day as the instant case and involved damages related to Hurricane Wilma. See Garden-Aire, DE 135 at 11. Indeed, insurance contract disputes in Florida have a five-year statute of limitations, and this suit was filed just before the fifth anniversary of Hurricane Wilma. Fla. Stats. § 95.11(2)(e). Therefore, the action was timely filed, and the Court will grant summary judgment for Plaintiff on this defense.

QBE's ninth and eleventh Affirmative Defenses assert that Plaintiff fails to state a claim and that there was no valid dispute requiring declaratory relief. The Court ruled against these defenses in granting Plaintiff leave to file a Third Amended Complaint. See DE 67 at 5-13 (finding that Plaintiff's amendment would not be futile). Accordingly,

13

the Court will grant summary judgment for Plaintiff on the ninth and eleventh Affirmative Defenses. QBE's tenth Affirmative Defense contends that Plaintiff is not entitled to appraisal because QBE denied Plaintiff's claim in its entirety. As described above, appraisal may be proper if QBE erred in denying coverage. Thus, the Court cannot grant summary judgment on this issue until it has evaluated the validity of QBE's denial of coverage.

### f. Affirmative Defense 12

In its twelfth Affirmative Defense, QBE asserts that Plaintiff's claim is barred because Plaintiff engaged in fraud and intentional concealment of material facts related to Plaintiff's claim. Specifically, QBE argues that Plaintiff either recklessly or intentionally submitted an inflated claim in its POL statement. Plaintiff, relying on Berkshire Mutual Insurance Co. v. Moffett, 378 F.2d 1007, 1012 (5th Cir. 1967), responds that disagreements over the valuation of a claim cannot, as a matter of law, rise to the level of fraud. However, Moffett does not stand for such an absolute proposition. Rather, the court in Moffett held that mistakes or exaggerations in the amount of an insured's claims will not amount to fraud "when these [errors] flow from the mistaken good faith judgment or opinion of the assured or his agents." Id. at 1012. Thus, QBE's fraud and concealment defense depends on whether Plaintiff submitted the POL statement in good faith. To prevail on this defense, QBE must show that Plaintiff made a "wilful, purposeful misrepresentation of facts having substantial materiality," with the intent to defraud. Id.; see also Wendel v. State Farm Fire & Cas. Co., 435 So. 2d 284, 286-87 (Fla. 5th DCA 1983) (finding that the insurer's fraud defense failed because the misrepresentation made by the insured "was not such that

14

would cause harm to the company.").

Here, there is a factual question as to whether Plaintiff submitted its POL statement in good faith.  QBE contends that Plaintiff's adjuster based his estimate on an improper extrapolation of the building's damages.  QBE further asserts that Plaintiff overstated its claim by including the replacement costs of windows and sliding glass doors that were not damaged by Hurricane Wilma.  Plaintiff responds that it never misled QBE, but only refused to respond to certain "pretextual requests" for information.  Because there is a disputed issue of material fact as to whether Plaintiff attempted to defraud QBE, the Court will deny summary judgment on QBE's twelfth Affirmative Defense.

### g. Plaintiff's Request to Proceed on a Dual-Track Basis

Plaintiff argues that, if the Court denies its summary judgment motion, the Court should nonetheless order appraisal to proceed while the Court determines the validity of the policy.  QBE responds that the adequacy of Plaintiff's compliance with its post-loss obligations must be determined before the Court may compel appraisal, even on a dual-track basis.  The Court agrees.  Florida courts permit appraisal and coverage determinations to proceed on a dual-track basis only after the trial court finds that a demand for appraisal is ripe.  Citizens Prop. Ins. Corp. v. Galeria Villas Condo. Ass'n, 48 So. 3d 188, 191-92 (Fla. 3d DCA 2010); see also Sunshine State Ins. Co. v. Corridori, 28 So. 3d 129, 131 (Fla. 4th DCA 2010) (holding that "the trial court must resolve all underlying coverage disputes prior to ordering an appraisal"); Citizens Prop. Ins. Corp. v. Gutierrez, 59 So. 3d 177, 178 (Fla. 3d DCA 2011) (finding that the trial court erred by ordering appraisal before determining that the insured complied with its

post-loss obligations). Therefore, because the Court has not yet found that Plaintiff complied with all of its post-loss obligations, Plaintiff's request to proceed on a dual-track basis will be denied.

### B. Plaintiff's Motion to Strike QBE's Demand for Jury Trial

On January 21, 2013, Plaintiff filed a Motion to Strike QBE's Demand for Trial by Jury [DE 92]. Plaintiff argues that there is no right to a jury trial for suits to compel appraisal or determine coverage. A party's right to a jury trial in a declaratory action depends on whether the action is essentially an action at law or at equity. Simler v. Conner, 372 U.S. 221, 222-23 (1963). "In other words, the right to a jury trial in a declaratory judgment action depends on whether there would have been a right to a jury trial had the action proceeded without the declaratory judgment vehicle." St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc., 561 F.3d 1181, 1198 (11th Cir. 2009). QBE contends that the appraisal claim is seeking to determine whether Plaintiff's breaches of the policy disentitle it to coverage. Therefore, QBE argues, the appraisal claim amounts to "an inverted claim for legal relief," and QBE has a right to a jury trial. DE 117 at 3 (citing Aspen Specialty Ins. Co. v.River Oaks of Palm Beach Homeowner's Ass'n, Inc., No. 11-81380-CIV-MIDDLEBROOKS, DE 131 at 2 (M.D. Fla. Aug. 9, 2012)). This argument is without merit. While the Court will have to determine, as a preliminary matter, whether Plaintiff complied with its post-loss obligations, the appraisal claim ultimately seeks to compel QBE to take part in the appraisal process. This is an action for specific performance — an equitable remedy — and accordingly, there is no right to a jury trial on this claim. See Garden-Aire, DE 123 at 1-2.

Plaintiff's coverage claim is likewise not amenable to a jury trial. As the Court

16

found in Garden-Aire, "Whether an insurance policy provides coverage for certain kinds of losses is a question of law for the Court to decide." Garden-Aire, DE 123 at 2 (citing Hartford Ins. Co. of the Midwest v. BellSouth Telecommc'ns, Inc., 824 So. 2d 234, 237 (Fla. 4th DCA 2002)). Therefore, as a question of law, the issue of coverage is not triable to a jury, and Plaintiff's motion to strike will be granted.

### C. Plaintiff's Motion in Limine

On January 22, 2013, Plaintiff filed a Motion in Limine to Prevent QBE From Presenting Evidence Concerning Valuation or Causation of Underlying Insurance Claim [DE 97]. Plaintiff argues that allowing QBE to present evidence on valuation or causation at trial would effectively nullify Plaintiff's right to resolve those issues before an appraisal panel. QBE responds that the evidence it will present on causation and valuation are directly relevant to whether Plaintiff complied with its post-loss obligations or committed fraud in relation to the claim. In particular, QBE asserts that its witnesses will testify to the lack of damage to Plaintiff's property at the time when Plaintiff made contrary representations.

As noted above, QBE will not be permitted to raise its fourth, fifth, sixth, or seventh Affirmative Defenses at trial. However, the Court will hear arguments on the first, second, third, and twelfth Affirmative Defenses. Accordingly, the Court will allow evidence on the causation or valuation of the underlying insurance claim only insofar as it relates to QBE's remaining Affirmative Defenses.

### D. Defendant's Motion to Exclude

On January 23, 2013, QBE filed its Motion to Exclude Testimony from Plaintiff Regarding the Applicability of the Florida Building Code, or in the Alternative,

17

Motion for Daubert Hearing [DE 103]. In the motion, QBE seeks to exclude the testimony of Plaintiff's corporate representative, Jeffrey Golant, regarding the applicability of the "thirty percent rule" to Plaintiff's underlying claims on the policy. QBE argues that Plaintiff has not designated Mr. Golant as an expert under Federal Rule of Civil Procedure 26, and therefore, he should be limited to providing lay opinion testimony at trial. Plaintiff does not dispute that Mr. Golant is a layperson regarding the Florida Building Code, but contends that he need not be an expert because he is not testifying as to the applicability of the Code. The Court agrees.

> Pursuant to Federal Rules of Evidence 701, a layperson's opinion testimony is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to the clear understanding of the witness' testimony or the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. In Mr. Golant's deposition, he explained that it was Plaintiff's position that the thirty percent rule mandates the replacement of undamaged glass on Plaintiff's property. DE 90-2 at 61:4-11. Mr. Golant's testimony thus goes to Plaintiff's reasoning for including the costs on the undamaged property in its POL statement. As noted above, QBE's fraud and concealment defense hinges on whether Plaintiff submitted the POL in good faith. Therefore, Plaintiff is using Mr. Golant's testimony to show that it acted in good faith, rather than to prove that the thirty percent rule is applicable to Plaintiff's underlying insurance claim. Accordingly, because Mr. Golant is not offering scientific, technical, or other specialized knowledge, QBE's motion will be denied.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Summary Judgment or in the Alternative Motion to Compel Appraisal on a Dual Track Basis and Stay Litigation Pending the Completion of the Appraisal Process [DE 93] is **GRANTED in part and DENIED in part** as follows:

   a. The motion is **GRANTED** as to Affirmative Defenses 8, 9, and 11, as well as on the issue of whether Plaintiff provided prompt notice of the subject loss, as described in Affirmative Defenses 1, 2, and 3;

   b. In all other respects, the motion is **DENIED**;

2. Defendant's Motion for Summary Judgment [DE 101] is **DENIED**.

3. Plaintiff's Motion to Strike Defendant's Demand for Trial by Jury [DE 92] is **GRANTED**.

4. Plaintiff's Motion in Limine to Prevent Defendant From Presenting Evidence Concerning Valuation or Causation of Underlying Insurance Claim [DE 97] is **GRANTED in part and DENIED in part**.  Defendant may present evidence on the causation or valuation of the underlying insurance claim only insofar as it relates to Affirmative Defenses 1, 2, 3, and 12.

5. Defendant's Motion to Exclude Testimony from Plaintiff Regarding the

Applicability of the Florida Building Code, or in the Alternative, Motion for Daubert Hearing [DE 103] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 22nd day of March, 2013.

_____
JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF.